GLADNEY, Judge.
This suit was instituted by Wiltz J. Roule and his wife, Grace Bienvenue Roule, for the recovery of damages as a result of the death of their son, Jules V. Roule, sustained in an automobile collision on the afternoon of June 1, 1955. At that time the vehicle driven by young Roule collided with a truck belonging to the Elder Lumber Company, Inc., and in the accident Roule received injuries which brought about his death within a short time thereafter. Following a trial of the case on its merits, judgment was rendered rejecting the demands of plaintiffs, hence this appeal.
On the date mentioned at about 4:30 o’clock p. m., with atmospheric conditions normal, Jules V. Roule was driving a Willys Jeep in a northerly direction toward Brouil-lette. The road, Louisiana Highway No. 116, commonly known as the Marksville-Brouillette Road, was of gravel construction and dusty. When the Jeep had reached a point along said road designated as being at approximately station 155 ~H 30 of said highway, the collision occurred. The truck, a 1942 Chevrolet Army truck, was being driven by Johnny Muse. Also occupying the truck were Joe A. Gaspard, seated on the front seat, and Bobby Brodnack, Belton Gaspard and Cleveland Carmouche, who were seated on blocks resting on the bed of of the truck behind the cab. All five were employees of the defendant. After the impact the two vehicles came to rest partially off of the outside of the curve of the highway. Photographs produced as evidence show the truck was headed southeasterly and the Jeep had turned far to the right and its left side was ranged along the right side of the truck, its front end pointing in about the same direction as the truck.
Plaintiffs have charged the driver of the truck was negligent in the following particulars :
“That defendant’s employee was driving an old truck in a bad state of repair and with mechanical defects well known to defendant and his employee. That the truck was overloaded and could not be controlled. That defendant’s employee was driving the said truck without the exercise of ordinary care, at a reckless rate of speed in loose gravel and at a point on a curve from which he could not see far ahead. That the driver of the truck assumed that the road around the curve was clear, and upon seeing the Willys Jeep driven by plaintiffs’ son, became panicky and desperate and gave up whatever slight control of the truck he might have had.
That defendant’s employee was driving at a speed in excess of 60 miles an hour with an obstructed view and on the wrong or left-hand side of the road, out of his lane of traffic and did not sound his horn upon approaching the curve. That defendant’s employee was not keeping a proper lookout and was driving with disregard for the safety of others. That said acts were the proximate cause of the injuries to and subsequent death of plaintiffs’ son.”
*484 The defendant expressly denied any fault on the part of its employee, Johnny Muse, and averred that Muse, an experienced driver, who was proceeding in the direction of Marksville, upon approaching the aforementioned curve, was driving at a speed of not more than fifteen miles per hour on his right-hand side of the road when he was suddenly confronted with the oncoming Jeep, traveling at a speed of forty to forty-five miles per hour and rounding the inside of said curve on the wrong side of the road; that the sudden appearance of the Jeep in the wrong lane of traffic created a sudden emergency which caused Johnny Muse, in attempting to avoid striking the Jeep head-on, to cut to his left or the outside of the curve, Muse being unable to turn to his right on the inside of the curve, because the base of the levee abutted the edge of the road at that point. Further, in its defense, the defendant alleges, alternatively, contributory negligence on the part of J. V. Roule in several particulars, but principal reliance was placed on an averment the Jeep was traveling on its wrong side of the highway and failed too yield to the truck the latter’s lane of travel.
From a careful review of the evidence we find plaintiffs have failed to support by any substantial evidence their charges that the truck was being driven in an unsafe condition, or that it was overloaded to the extent it could not be controlled, or that it was being driven at an excessive rate of speed, or that Muse panicked when he saw the approaching Jeep and relinquished his control over the truck, or that he failed to sound his horn upon approaching the curve, and that he was not maintaining a proper lookout. The evidence tendered in support of these charges is so apparently inadequate we think further discussion thereof is unnecessary.
The only allegation of negligence by plaintiffs deserving the serious consideration of this court relates to the position of the truck on the highway just prior to its collision with the Jeep. Plaintiffs aver the accident was caused by an attempt by Muse to complete the turn around the levee without remaining on his side of the highway, and argue this inference logically follows from the fact the point of impact of the vehicles occurred on the outer edge of the highway.
Engineering charts placed in the record fix the apex of the curve at station 155 + 30. The curve occurs between station 154 + 55 and station 155 -j- 56.6. ■ Thus, the outside arc of the curve covers a distance of slightly over one hundred feet and the road appears to turn at an angle of approximately 45 degrees, occasioned by a sharp turn in the abutting Red River levee. At the apex of the curve the shoulder of the road and the east bank of the ditch on the west side of the highway have become eradicated by vehicles which have worn away the toe of the levee to a depth of more than a foot. The highway is of gravel construction and is approximately thirty-five feet in width, including a three-foot shoulder on the east side or outside of the curve at station 155 + 30. The roadbed is not steeply banked on the curve, the outside thereof being about one and one-half feet higher than on the inside. The testimony of all parties indicates visibility around the curve was extremely limited and it was classified as a hairpin turn and dangerous.
For the purpose of determining whether either of the vehicles involved in the collision was not traveling in its proper lane of travel, we have closely examined the testimony of all witnesses to the accident, including the occupants of the truck, Bobby Gene Sherman, who was traveling in the Jeep with Jules V. Roule, and Miss Tressie Ortego.
Of the occupants of the truck, only Johnny Muse, Joe Gaspard and Bobby Brodnack were eyewitnesses to the impending collision. Belton Gaspard and Cleveland Carmouche testified they did not observe the impact of the vehicles due to their *485 positions in the truck. Muse testified he was traveling along his right side of the road, the side next to the levee, and when he had traveled about one-third of the distance of the curve he was met by the Jeep approaching in its wrong traffic lane. He says he first observed the Jeep from a distance of fifteen feet, and upon realizing a head-on collision was imminent, he turned his vehicle to the left in an endeav- or to avoid the effect of a direct collision. Similar testimony was given by Joe Gas-pard. The testimony of those riding in the truck was to the effect the truck was traveling at a rate of speed not in excess of twenty-five miles per hour in its proper lane of travel and that it was equipped with a governor which prevented it at any time from exceeding thirty miles per hour; that the vehicle was in good mechanical condition and there was no indication a tie rod gave way prior to the impact; and that the truck was turned to the left prior to the impact. Joe Gaspard and Johnny Muse ^stated the point of impact occurred near the middle of the road.
Bobby Gene Sherman testified the Jeep was traveling on its right side of the road and that the point of impact occurred on the Jeep’s extreme right side of the road, the outside of the turn. The testimony of this witness requires close examination in view of the following testimony:
“Q. Bobby Gene, do you remember giving a written statement to Mr. McDaniel right after .the accident? A. Yes,T do.
“Q. Now I believe you testified here that you saw the collision? A. Yes, sir.
“Q. And that you were on the extreme right of the curve when you entered? A. Yes, sir.
“Q. Now I will ask you if you did not tell McDaniel that ‘just before he cut the Jeep wheel, I would say it was about one-fourth the way over the middle of the road into the opposite traffic lane.’ Did you tell him that? A. Yes, I did.”
******
“Q. I will ask you this: Didn’t you tell Mr. McDaniel that you didn’t see the collision because you were lighting a cigarette? A. No, sir. I was lighting a cigarette, but when I felt J. V. jerk to the right and I saw his foot change to the brake pedal, I looked up and that’s when I saw it.
“Q. You said: ‘J. V. saw the truck before I did because I was lighting a cigarette. J. V. cut the Jeep to his right.’ Now, is that correct? A. Yes, sir.
“Q. Now if you were watching and you were on an outer curve, could you see that truck coming? A. If I had been watching, I could have.
“Q. Well, were you watching? A. No, sir, I was stooping down. The windshield was open and I was stooping below the wind so I could light my cigarette, and I didn’t see anything until I felt J. V. jerk.
“Q. Until you felt J. V. jerk? A. Jerk his Jeep.
“Q. Now when he jerked, did you see the truck cutting to its left? A. No, sir, I just seen it coming straight for us.”
After Jules V. Roule and Bobby Gene Sherman had left Marksville their vehicle was just ahead of that being driven by Miss Tressie Ortego. This witness stated when the Jeep was entering the curve she was proceeding in the same direction about one hundred yards to its rear; that the road was so dusty she could not determine on which side of the highway the Jeep was traveling; and that she saw the truck come from behind the levee and head straight across the highway. She likewise saw the Jeep before the impact turning toward the outside of the highway. She placed the *486 point of impact as being on the extreme outside of the curve.
After weighing the evidence as carefully as we can, it is our opinion that the truck as it approached the curve, was traveling in its proper traffic lane and was so proceeding at the time when Muse first observed the Jeep. The testimony of Bobby Gene Sherman establishes to our satisfaction the Jeep as it came around the curve where the approaching truck could be observed, was traveling partially in the lane reserved for traffic headed toward Marks-ville. This testimony, in our opinion, establishes negligence on the part of Jules V. Roule.
Consideration of all of the evidence leads thus to the conclusion the sole and proximate cause of the accident was the act of young Roule traveling on the wrong side of the highway. Muse was thereby placed in a position of such danger he was justified in trying to escape therefrom by turning to his left. The evidence conclusively establishes that both vehicles were turned toward the outside of the curve prior to the impact. This being true, it seems to us the emergency arose solely by reason of the Jeep being in its wrong lane of travel and the question of whether the impact occurred in the center of the highway or on the extreme outside of the highway does not materially affect the issue. Certainly, it is true that once Muse had committed his vehicle to a left turn, he had no further opportunity to change its course. It is our opinion the evidence does not establish any negligence by Muse in the operation of defendant’s truck.
A careful review of the record discloses no error in the judgment from which plaintiffs have appealed. Accordingly, the judgment must be affirmed at appellants’ cost.